IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANTHONY POPSON, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | C.A. No. 10-77 Erie |
| ) | District Judge McLaughlin |
| DAVID GALLOWAY, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon Defendant David R. Galloway's ("Galloway") Second Motion for Summary Judgment [Doc. 64] and Defendant Philip C. Warholic's ("Warholic") Motion to Rescind Settlement Agreement ("Motion to Rescind") [Doc. 68]. Also before the Court is a previous Motion for Summary Judgment filed by Galloway ("First Motion for Summary Judgment") [Doc. 44]. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1367.

### **I.   BACKGROUND**

The claims underlying the instant action stem from a collection suit originally filed by Midland Funding, LLC ("Midland"), the purchaser of a credit card debt previously owed to HSBC Bank Nevada, against Plaintiff Anthony Popson ("Popson"). On or about September 14, 2009, Defendant Warholic, an attorney employed by Mann Bracken, LLC ("Mann Bracken"), signed and filed a complaint in the Elk County Court of Common Pleas against Popson on behalf of Mann Bracken's client, Midland. (See

1

Defendant's Statement of Undisputed Material Facts, Exh. 1). The complaint alleged that Popson owed Midland a sum of $14,702.49 in unpaid consumer credit card debt. (Id.). Attachments accompanying the Elk County complaint included a summary of the alleged debt, the original credit card number, and Popson's name, address, telephone number and Social Security number. (Id.; Second Amended Complaint, Exh. A). However, Midland failed to attach a copy of the credit card agreement or other documentation of the alleged debt. (See Defendant's Statement of Undisputed Material Facts, Exhs 1-8).

On or about October 1, 1999, Popson, acting *pro se*, responded to the complaint by denying that the alleged debt was his and requesting copies of the original credit card application, evidence of charges, and an accounting of any payments and charges allegedly made on the account. (Defendant's Statement of Undisputed Facts, Exh. 2). Midland filed and later withdrew a motion for judgment on the pleadings, but never responded to Popson's request for documentation of the alleged debt and a copy of the cardholder agreement. (Defendant's Statement of Undisputed Facts, Exhs. 3, 7).

At the time that the Midland collection action was instituted, Defendant Galloway was employed as an attorney at Mann Bracken. (Defendant's Statement of Undisputed Material Facts, Ex.11; Second Amended Complaint, ¶ 38). However, Galloway never entered an appearance in that action on behalf of Mann Bracken and his signature does not appear on the complaint or any other pleadings. (Defendant's Statement of Undisputed Material Facts, Exhs. 1-8). Although Galloway's name does appear in typed font in the signature block of the complaint along with a list of several other Mann Bracken attorneys, Warholic's name is signed on the signature line and circled in pen in the signature block underneath, indicating that Warholic was the

attorney who filed the action. (Defendant's Statement of Undisputed Material Facts, Exh. 1).

On or about December 31, 2009, Galloway left Mann Bracken and became employed by Defendant Fulton, Friedman, and Gullace, LLP ("FF&G"). (Defendant's Statement of Undisputed Material Facts, Exh. 11). On or about March 19, 2010, Galloway first entered an appearance in the Midland collection action on behalf of FF&G for the sole purpose of filing a Praecipe to Discontinue the action against Popson without prejudice. (Defendant's Statement of Undisputed Material Facts, Exhs. 7, 8, 11).

On April 8, 2010, Popson filed suit against Midland alleging that Midland had pursued a collection action against him in state court without properly substantiating the alleged debt in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. See Popson v. Midland Funding, LLC, CV 10-00082 Erie. On or about June 13, 2011, the parties in the Midland action entered into a confidential settlement agreement ("Settlement Agreement") and on November 10, 2011, the action was dismissed. The Settlement Agreement contained the following pertinent release language:

> In exchange for the consideration provided for in Paragraph two (2) below, POPSON releases MCM and MCM-Related Persons (the "Released Parties") including its attorneys and their staff from any and all Claims related to the MCM Account and the Lawsuit that could have been or could be brought against MCM, MCM-Related Persons and its attorneys and their staff. MCM shall release POPSON, his attorneys Kimmel & Silverman, P.C., its partners, attorneys, associates, employees and staff from any and all Claims that could have been brought against POPSON, his attorneys Kimmel & Silverman, P.C., its partners, attorneys, associates, employees and staff strictly arising out of the Lawsuit only . . .

3

(Defendant's Supplemental Statement of Facts, Ex. B).  The Settlement Agreement defined "Claims" to include "all claims, counterclaims, demands, actions, causes of action, debts, liabilities, damages, costs, fees, expenses, rights, duties, obligations, liens, petitions, suits, losses, controversies, executions, offsets and sums of an kind and nature, whether direct or indirect, liquidated or unliquidated, contingent or actual, in law or equity, known or unknown, suspected or unsuspected or of whatever type or nature."  (Id.).  It defined "MCM-Related Persons" as "MCM's predecessors, successors, assigns, parent corporations (including, but not limited to, Encore Capital Group, Inc.), subsidiaries, affiliates, holding companies, divisions, unincorporated business units, joint venturers, partners, insurers, officers, directors, shareholders, managers, employees, agents, servants, representatives, officials, attorneys, associates and trustees, and the Credit Bureaus."  (Id.).

Popson filed the instant suit against Galloway (individually and on behalf of FF&G) on April 1, 2010, alleging that Galloway and FF&G had similarly failed to properly furnish documentation of the alleged debt in the state court collection action in violation of the FDCPA.  On July 27, 2010, Judge Maurice B. Cohill dismissed Popson's action against Galloway and FF&G for failure to state a claim, but permitted Popson an opportunity to amend his complaint.  [Dkt. No. 17-18].  Popson filed an Amended Complaint on August 10, 2010, and a Second Amended Complaint on January 18, 2011, the latter of which named two additional defendants, including Warholic.[1]  [Dkt Nos. 19, 33].  On August 19, 2010, this case was reassigned from Judge Cohill to the undersigned.  [Dkt. Entry 8/19/2000].

On March 31, 2011, Warholic filed a Motion to Dismiss. [Dkt. No. 38]. On January 9, 2012, Warholic and Popson agreed upon a settlement and Warholic was dismissed from this action. [Dkt. Entry 1/9/2012].

Galloway filed his First Motion for Summary Judgment on May 31, 2011, asserting, *inter alia*, that Popson had failed to produce any evidence that Galloway had engaged in collection activity within the meaning of the FDCPA or had engaged in any activity prohibited by the statute. [Dkt. No. 44]. Popson responded on June 30, 2011, and Galloway filed a reply on July 19, 2011. Oral argument on the fully-briefed motion was scheduled for February 16, 2012. However, on January 24, 2012, Galloway petitioned the Court to reopen discovery so that he could obtain a copy of the Settlement Agreement reached in Popson's related action against Midland. [Dkt. No. 54]. Galloway suggested that the Settlement Agreement contained language which could be construed as a release of liability in the instant suit. (Defendant's Motion to Reopen Discovery, p.1). Following oral argument on the Motion to Reopen Discovery, the Court denied Galloway's First Motion for Summary Judgment without prejudice and permitted Galloway to file a separate motion for summary judgment based upon the release of liability contained in the Midland Settlement Agreement. [Dkt. Entry 2/14/2012].

On February 28, 2012, Galloway filed his Second Motion for Summary Judgment on the grounds that the release language contained in Popson's Settlement Agreement with Midland released him from liability in this action. [Dkt. No. 64]. The

---

1   The other additional defendant, Susan E. Ehasz, was never served.

following day, Warholic moved to rescind his own settlement with Popson for the same reason. [Dkt. No. 68]. Each motion is fully briefed and ripe for review.

## II. STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed. R. Civ. P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3rd Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3rd Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3rd Cir. 1990) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3rd Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3rd Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### III. ANALYSIS

#### A. The Popson/Midland Settlement Agreement

In his Second Motion for Summary Judgment, Galloway asserts that Popson released him from any liability for the FDCPA violations alleged in this case when Popson executed the Settlement Agreement in his related suit against Midland.

7

(Memorandum of Law in Support of Defendant's Second Motion for Summary Judgment, p. 1). Specifically, Galloway contends that the language in the Settlement Agreement releasing all claims against Midland's "attorneys" refers not only to claims against Midland's counsel in that action, but also to the claims against Galloway in this case. Warholic raises the same argument in his Motion to Rescind. Popson responds that the release language applies only to Midland's counsel in the settled action and did not cover claims against any other attorneys employed by Midland.

Under Pennsylvania law, it is well-settled that the effect of a release is governed by the intent of the parties to the release. See, e.g., Bickings v. Bethlehem Lukens Plate, 82 F.Supp.2d 402, 405 (E.D. Pa. 2000) (citing Three Rivers Motors Co. v. Ford Motor Co., 522 F.2d 885 (3rd Cir. 1975)). The intent of the parties is gathered from: "(1) the language of the release and (2) the circumstances surrounding the execution of the release." Id. (citing Wenger v. Ziegler, 226 A.2d 653 (Pa. 1967)). Releases must be "strictly construed 'so as to avoid the ever present possibility that the releaser may be overreaching.'" Bowersox Truck Sales and Service, Inc. v. Harco Nat. Ins. Co., 209 F.3d 273, 279-80 (3rd Cir. 2000) (quoting Restifo v. McDonald, 230 A.2d 199, 201 (Pa. 1967)).

In construing the language of a release, terms are to be given their ordinary meanings unless a different meaning was clearly intended. Bickings, 82 F.Supp.2d at 405; see also Harrity v. Medical College of Pennsylvania Hosp., 653 A.2d 5, 10 (Pa. Super. 1994) (stating that the construction of a release may not conflict "with the accepted and plain meaning of the language used") (quoting Acme Markets, Inc. v. Federal Armored Express, Inc., 648 A.2d 1218, 1220-21 (1994)). Moreover, the

8

language of the release "must be construed as a *whole* and the parties' intentions must be ascertained from the *entire* instrument; effect *must* be given to each part of a contract." Harrity, 653 A.2d at 10-11 (citing Wrenfield Homeowners Ass'n, Inc. v. DeYoung, 600 A.2d 960 (Pa. Super. 1991)) (emphasis in original); Bickings, 82 F.Supp.2d at 405 ("[T]he language of the release must be viewed in the context of the entire document."). Finally, in ascertaining the intention of the parties, "the court may take into consideration the surrounding circumstances, the situation of the parties, the objects they apparently have in view, and the nature of the subject-matter of the agreement." International Organization Master, Mates and Pilots of America, Local No. 2 v. International Organization Masters, Mates and Pilots of America, 439 A.2d 621, 624 (Pa. 1981); Bickings, 82 F.Supp.2d at 405 ("[I]n determining the intent of the parties, a court must inquire into the circumstances surrounding the execution of the release.").

The term "attorneys" is not defined in the Settlement Agreement. However, as previously noted, terms in a release are not construed in a vacuum, but rather, in conjunction with the instrument as a whole. Harrity, 653 A.2d at 10-11. The language of the Settlement Agreement, taken as a whole, reveals that the intent of the parties was to settle Popson's claims against Midland and its related entities relative to the allegations in *that* specific lawsuit, without any reference to Popson's pending suit against Galloway. For example, although Popson filed the instant suit one week prior to his action against Midway, and despite that both actions were pending at the time of the Midland settlement, the Settlement Agreement contains no reference to *any* of the defendants in this action or the claims asserted therein. Taking into consideration the surrounding circumstances and the parties' undisputed awareness as to the existence

9

of both lawsuits, the Settlement Agreement's lack of any reference to the instant action is persuasive. Consequently, Galloway's Second Motion for Summary Judgment is denied.[2]

### B.     The FDCPA

As discussed above, Galloway's First Motion for Summary Judgment was denied without prejudice in order to allow Galloway to reopen discovery and move for summary judgment based upon the release language contained in the Settlement Agreement. Having rejected that contention, I will now revisit Galloway's previous, fully-briefed summary judgment motion relative to the underlying merits of Popson's FDCPA claims.

By way of background, the FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e. Accordingly, "the Act provides consumers with a private cause of action against debt collectors who fail to comply with the Act." 15 U.S.C. § 1692k. Alleged violations of the FDCPA "should be analyzed from the perspective of the 'least sophisticated debtor'" to "ensure that the FDCPA protects all consumers, the gullible and the shrewd." Brown v. Card Service Center, 464 F.3d 450, 453-54 (3rd Cir. 2006) (quoting Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3rd Cir. 2000); Clomon v.

---

[2]     This conclusion is also dispositive as to Warholic's Motion to Rescind which is based entirely upon his contention that the Midland Settlement Agreement released him from liability prior to his own settlement with Popson.

Jackson, 988 F.2d 1314, 1318 (2nd Cir. 1993)). This standard requires "more than 'simply examining whether particular language would deceive or mislead a reasonable debtor' because a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor." Brown, 464 F.3d at 454 (quoting Quadramed, 225 F.3d at 354) (internal citations omitted).

In his original complaint, Popson alleged that Galloway initiated and pursued the Midland state court collection action against him without attaching proper documentation of the alleged debt or making any attempt to determine whether the alleged debt actually belonged to Popson. (Complaint ¶¶ 13, 14-16). Popson further alleged that, when Popson challenged the basis for the debt, Galloway refused to provide the requested documentation or validate the debt. (Complaint ¶¶ 19-20). Popson asserted that Galloway's pursuit of the collection action without any supporting documentation violated three provisions of the FDCPA: "(1) 15 U.S.C. § 1692d, which prohibits any conduct, the natural result of which is to harass, oppress, or abuse; (2) 15 U.S.C. § 1692e, which prohibits false, deceptive, or misleading representations; and (3) 15 U.S.C. § 1692f, which prohibits the use of unfair or unconscionable means to collect or attempt to collect any debt." (Memorandum Opinion, Cohill, J., Dkt. No. 17, at 5).

As noted above, Judge Cohill dismissed Popson's first complaint after concluding that, even if each of the allegations in the complaint were true, Popson still failed to state any violation of the FDCPA. Given an opportunity to amend his complaint, Popson added two additional defendants, Warholic and Ehasz, but failed to allege any new facts concerning Galloway or FF&G. Consequently, his Second Amended Complaint relies upon the precise same factual allegations that were previously

determined by Judge Cohill to be legally insufficient to state a claim for relief. Moreover, now that this matter is before the Court on a summary judgment motion, we are no longer obligated to accept unsupported allegations in the complaint as true; rather, the plaintiff must "go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim." Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061. Here, Popson has failed to meet this burden. The record conclusively demonstrates that Galloway's only involvement in the Midland collection action was to file an appearance on behalf of FF&G and discontinue the suit. In addition to Galloway's unrebutted declaration that he had no involvement in that action other than its discontinuance, a review of the Elk County docket and the documents filed therein reveals that Galloway's signature does not appear on the Midland complaint[3] or on any other pleading or filing in that action aside from the Praecipe to Discontinue. (See Defendant's Statement of Undisputed Material Facts, Exs. 1, 8, 11). Indeed, during his deposition, Popson conceded that he had no evidence to support his allegation that Galloway had initiated the Midland collection action:

> Q: How about David Galloway, what did he do that you would find harassing, oppressive or abusive?

---

3   Popson cites Evans v. Midland Funding, LLC, 574 F.Supp.2d 808 (S.D. Oh. 2008), for the proposition that Galloway's involvement throughout the Midland collection action can be inferred simply from his name appearing in Mann Bracken's signature block on pleadings. We disagree. In Evans, the court held that three attorneys who had each *signed* a collection complaint against the plaintiff could be found liable as debt collectors. Id. at 818-19. Here, it is undisputed that Galloway never signed the Elk County complaint or any other pleadings other than the Praecipe to Discontinue.

> A: He took the case, and he sued me over a debt that I did not owe.
>
> Q: When did David Galloway sue you over a debt that you did not owe?
>
> A: Well –
>
> Q: Did he sign the State court complaint?
>
> A: No.
>
> Q: Did he sign anything in the State Court Action other than discontinuing the case?
>
> A: No.
>
> Q: So what did David Galloway do that you found abusive, oppressive or harassing?
>
> A: I just assumed that his name was there that he had something to do with the case.

(Popson Deposition Transcript, Defendant's Statement of Undisputed Material Facts, Ex. 9, pp. 44-45). Consequently, given the Rule 56 record development, it is now clear that Galloway's only activity in the Midland collection action was to enter an appearance on behalf of FF&G and discontinue the suit.[4]

Turning to the specific FDCPA violations alleged in the Second Amended Complaint, Popson first contends that Galloway's conduct violated § 1692d of the FDCPA which prohibits "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. The statute enumerates several nonexclusive examples of prohibited conduct

---

4   With respect to FF&G, Popson has never alleged that the firm had any involvement in the Midland collection action other than to discontinue the case. See Complaint, ¶¶ 38-39; see also Popson Depo., pp. 44-45.

including "[t]he use or threat of use of violence," "[t]he use of obscene or profane language," "[t]he publication of a list of consumers who allegedly refuse to pay debts," "[t]he advertisement for sale of any debt to coerce payment of the debt," "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously," and "the placement of telephone calls without meaningful disclosure of the caller's identity." Id. Although these examples are not exhaustive, each refers to tactics intended to "embarrass, upset, or frighten a debtor." Harvey v. Great Seneca Financial Corp., 453 F.3d 324, 330 (6th Cir. 2006). In Harvey, the Sixth Circuit concluded that even the act alleged by Popson, the filing of a collection action without proper documentation, was clearly "not comparable" to the tactics targeted by § 1692d and, consequently, did not violate the FDCPA. Id. at 330. As such, it stands to reason that even the least sophisticated consumer would not find the *dismissal* of such an action to be embarrassing, upsetting or frightening.

Popson next alleges that Galloway violated § 1692e of the Act which prohibits the use of any "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Specifically, Popson contends that Galloway falsely represented the "character, amount, or legal status of [a] debt" in violation of subsection 1692e(2) and used "false representation or deceptive means to collect or attempt to collect [a] debt" in violation of subsection 1692e(10). 15 U.S.C. §§ 1692e(2),(10). However, the act of discontinuing a collection action does not technically constitute a representation of any sort, false or otherwise. Moreover, examples of conduct which has been held to violate § 1692e include impersonating a public official, falsely threatening litigation from an attorney in connection with a debt,

14

and misrepresenting the amount of debt owed.  Harvey, 453 F.3d at 331.  Dismissing a collection action is not akin to any of those deceptive behaviors, even to the least sophisticated consumer.

Finally, Popson alleges that Galloway used "unfair or unconscionable means to collect or attempt to collect [a] debt" by attempting to collect an amount which was not "expressly authorized by the agreement creating the debt."  15 U.S.C. § 1692f(1).  Typical examples of a violation of § 1692f(1) include attempts by debt collectors to charge fees or interest rates not specified in a debt agreement.  See, e.g., Pollice v. National Tax Funding, L.P., 225 F.3d 379, 408 (3rd Cir. 2000) (holding that defendants violated § 1692f(1) by charging an interest rate which was not clearly set forth in the debt agreement); Gigli v. Palisades Collection, LLC, 2008 WL 3853295, *8 (M.D. Pa. 2008) (holding that plaintiff's allegation that defendants attempted to apply an interest rate not agreed upon in plaintiff's credit card agreement stated a claim under § 1692f(1)).  The act of discontinuing a collection action simply does not fall within the scope of conduct addressed by this subsection.

## IV.  CONCLUSION

For the foregoing reasons, Galloway's Second Motion for Summary Judgment and Warholic's Motion to Rescind are each denied.  Galloway's First Motion for Summary Judgment is granted.   This action is dismissed.